### ARDEN and others *against* PATTERSON and DE HART.

This Court will set aside an assignment void at law, and necessarily leading to fraud and corruption.

As, where *D.* assigned all his claim and right of action for a certain quantity of wine, against *A.* to *S.*, in trust for the creditors of *D.*, and *P.*, an attorney, who had acquired a knowledge of the grounds of the claim, as attorney, from *D.* and *S.*, purchased the right of action of *S.*, who supposed the chance of recovery desperate, for a trifling consideration, and prosecuted the suit wholly for his own benefit, and recovered a judgment for the whole amount, the agreement and assignment were held to be unlawful and void, on the ground of *champerty*, even though *P.* might be a creditor of *D.;* and on *S.* refunding to *P.* the consideration paid for the assignment, a perpetual injunction was awarded, prohibiting *P.*, or any other person for his use, from proceeding at law to enforce the judgment so obtained by him against *A.*

The decision of a Court of law, on a summary application to its equity, by motion and affidavit, is not such a *res judicata* as will conclude this Court from any inquiry into the case.

*Nov.* 8, 1820, and *Jan.* 4, 1821.   THE bill was filed *October* 8, 1818, by *Richard D. Arden, Daniel Sullivan,* and *Isaac F. Roe,* against *John W.*

*Patterson* and *Jacob De Hart,* for the purpose of having a
certain assignment by *S.* and *F.* to *D.* for the benefit of *P.,*
of a right of action against *A.* declared void and cancelled ;
and for a perpetual injunction to stay all proceedings under
a judgment obtained by *P.* in the names of *S.* and *F.* against
*A.,* &c. The material facts in the case are so fully stated
in the opinion delivered by the Court, that it is unnecessary to
detail the allegations in the pleadings, or the proofs taken
in the cause.

1821.

ARDEN
v.
PATTERSON.

*November* 8, 1820. The cause was this day brought to a
hearing.

*Harison* and *Wells,* for the plaintiffs, made the following
points :

1. The contract made by the defendant, *P.,* with *Sullivan*
and *Roe,* for their right of action against *Arden,* and the con-
summation of it by the assignment, are within the statute
against *Champerty* and maintenance. (1 *Bac. Abr.* 575.
15 *Viner. Abr.* 158. pl. 28, 29. *Hawkins'* P. C. B. 1 *Ch.*
83. 89. 1 *N. R. L.* 172. sess. 34. ch. 87. s. 1. 3. 7.)

2. That the conduct of *P.,* being an attorney of the Su-
preme Court, was, under the circumstances of the case, un-
lawful and oppressive, if not fraudulent, in taking advantage
of his professional character and skill, in order to obtain an
undue advantage over *S.* and *F.,* in the purchase of their
right of action against *A.,* for a consideration grossly inade-
quate.

3. That the assignment by *P.* and *R.* ought, therefore, to
be set aside, and the consideration money paid therefor,
remaining in the hands of *G.,* be repaid to *P.,* with the costs
of the suit at law, and that *P.* should be perpetually enjoin-
ed from proceeding on the judgment against *A.* They cited
further, 2 *Atk.* 25. 224. 12 *Vesey,* 199. 1 *Eden's Rep.*
305. 18 *Vesey,* 120. 2 *Madd. Ch.* 356. *Cooper's Rep.* 5.
*Doug.* 698. *n.* 1 *Term Rep.* 153.

1821.

ARDEN
v.
PATTERSON.

*T. A. Emmet* and *Hoffman*, contra. They cited 4 *Bl. Comm.* 135. 4 *Term Rep.* 340. 2 *Bl. Rep.* 820. 8 *Johns. Rep.* 227. 9 *Johns. Rep.* 60. 3 *Johns. Rep.* 425. 4 *Johns. Rep.* 403. 1 *Johns. Cases*, 51. *Cases Temp. Talbot*, 37. *Cooper's Eq. Pl.* 204. 3 *P. Wms.* 379. 3 *Ves.* 495. *Wyatt's Pr. Reg.* 162. *Mitf. Pl.* 100. *Doug.* 471. *per Buller, J.* 15 *Viner.* 160. A. pl. 38.

*January* 4. The cause stood over for consideration until this day.

THE CHANCELLOR. The question in this case is, whether the assignment by the plaintiffs, *S.* and *R.*, to the defendant, *De Hart*, in trust for the defendant, *Patterson*, in the summer of 1815, of their demand and right of action against *Arden*, for thirteen pipes of wine, can be permitted to stand?

The facts on which this question turned, are the following:

*G. De Peyster*, who had deposited thirteen pipes of *Madeira* wine with the plaintiff *A.*, as collateral security for the payment of certain promissory notes made by him and held by *A.*, amounting to 4,000 dollars, having, afterwards, become insolvent, on the 16th *February*, 1811, assigned to the plaintiffs, *S.* and *R.*, in trust for certain of his creditors, mentioned in a prior assignment, which is not produced, all his property, including a demand which he had against the plaintiff, *Arden*, for the value of the thirteen pipes of wine. *De Peyster* testified, that he then owed the defendant *P.* 196 dollars, on a balance of accounts; and he thinks that *P.* was one of the creditors for whose benefit that assignment was made. The assignees immediately brought a suit in trover against *Arden* for the wine; and on the trial they were nonsuited, for want of proof in support of their title, as such assignees, to the wine, and they were subjected to the payment of 351 dollars and 31 cents, for the costs and expenses of the suit. The demand was then given up as hopeless.

The defendant *P.*, who was an attorney at law, and previously instructed by *De Peyster* in the merits of the controversy relative to the wine, applied to the plaintiffs, *S.* and *R.*, to purchase their right of action against *Arden.* His application to purchase that demand was in the summer of 1815; and he offered to refund their costs and expenses, as the consideration for the purchase; they closed with his proposal, and took his note for the 351 dollars and 31 cents, and at his request made a formal assignment to the defendant, *De Hart*, (who was his brother-in-law, residing in *New-Jersey*,) as his nominal trustee. The defendant *P.* then brought a new suit in trover, in the names of *S.* and *R.*, against *Arden*, for the wine, and as their attorney, but for his own benefit, and at his own risk. In this new suit, the defendant *P.* proceeded, and recovered by verdict, 5,987 dollars and 25 cents, which he now claims as lawful owner. The note that *P.* gave to the plaintiffs, *S.* and *R.*, was sued, and the money collected, and it now remains in the hands of their attorney. This money the plaintiffs offer to return, and to pay the defendant *P.* the costs of the suit. Subsequent to this recovery, the plaintiffs, *S.* and *R.*, being advised that the assignment was fraudulently and corruptly procured by the defendant *P.*, assumed to act as owners of the judgment so recovered, and entered into a compromise and settlement with *Arden* for 2,500 dollars, which they took as assignees for the creditors of *De Peyster*, and acknowledged satisfaction of the judgment. The entry of that satisfaction was, afterwards, vacated by the Supreme Court, upon motion of the defendant *P.*; and the question now fairly occurs, is it proper for this Court, upon these facts, to set aside the assignment to *P.*, and leave the plaintiffs, as trustees, to take the benefit of the judgment, or of their settlement with *Arden?*

This was a purchase by an attorney, for a very small and inadequate consideration, of a matter in litigation, and for

the very purpose of a renewed litigation. It was a pur-
chase by a person known to the other contracting party to
be an attorney, and he knowing that the other contracting
parties held the claim merely in trust for the benefit of cre-
ditors. The purchase was avowedly made as a matter of
speculation, and at a time when this attorney knew, from
previous disclosures made to him in his character of attor-
ney, all the facts on which the foundation of the claim so
purchased rested, and which created a belief in his mind that
the value of the wine could be recovered. Such a purchase,
by such an officer, and under such circumstances, cannot be
sustained. It is champerty, for the unlawful maintenance of
a suit, and the contract was therefore unlawful, as well by
common law, as by the statute. The statute declares, (1 *N. R.
L.* 172.) that "no officer, or other person, shall take
upon him any business that is or may be in suit in any
Court for to have part of the thing in plea or demand ; and
no person, upon any such agreement, shall give up his right
to another, and every such conveyance and agreement shall
be void." And again ; "All persons who move pleas and
suits, or cause them to be moved, either by their own pro-
curement or by others, and sue them at their own proper
costs, for to have part of the thing in controversy or demand,
or part of the gain, shall be adjudged champertors." And
" all gifts and conveyances made for maintenance, shall be
void." The purchase of a lawsuit by an attorney, in a case
like this, is champerty in its most odious form ; and it ought
equally to be condemned on principles of public policy. It
would lead to fraud, oppression, and corruption. As a
sworn minister of the Courts of justice, the attorney ought
not to be permitted to avail himself of the knowledge he ac-
quires in his professional character, to speculate in lawsuits.
The precedent would tend to corrupt the profession, and
produce lasting mischief to the community. The knowledge
which led to this speculation was acquired by the defendant,

*P.,* as the attorney of *De Peyster,* for *De Peyster* disclosed to him all the facts relative to his dealings with *Arden,* and which led to the deposit of the wine.

A great deal was said, and powerfully enforced, upon the argument, in respect to the usury of *Arden.* Be that as it may, that is not the point before us, nor does it relate to this question of the purchase of the *trover* suit. The conduct of *Arden,* in his efforts to defeat the first suit in trover, likewise occupied much of the attention of the counsel, as did also the efforts of the defendant *P.,* to procure the testimony of *De Peyster.* But I place all those considerations out of view, as having no necessary connexion with the plain and simple question, whether the purchase of the lawsuit by *P.* was lawful, or ought to be permitted by this Court to be available.

I have no doubt of the settled jurisdiction of this Court over the case, so far as to set aside an assignment void in law, and necessarily leading to fraud and corruption. This is the peculiar province of this Court, and such a salutary jurisdiction is in constant exercise. In *Strachan* v. *Brander,* (1 *Eden,* 303.) the Lord Keeper ordered a bond, taken by an attorney, to be delivered up as unconscionable, savouring of champerty, and dangerous to public justice. And in *Wood* v. *Downes,* (18 *Vesey,* 120.) it was declared, that an agreement between an attorney and his client could not stand in a Court of equity, upon the doctrine of *champerty,* and as the purchase of a title in litigation, even if the defendant had not been an attorney. There are, also, numerous cases in which, upon principles of policy, the Court will not suffer a contract between an attorney and the client to stand. There would be no bounds, as Lord *Thurlow* observed, to the overruling influence of the power of an attorney, if it were not so. The object of the rule is, to remove the temptation to imposition and abuse, for clients must apply to attorneys for assistance; and, though *S.* and *R.* were not strictly clients of the defendant *P.* at the time of the pur-

1821.

ARDEN
v
PATTERSON.

This Court will set aside an assignment void at law, and necessarily leading to fraud and corruption.

An agreement between an attorney and his clients, amounting to *champerty,* cannot stand in a Court of equity.

1821.

ARDEN
v.
PATTERSON.

chase, yet he came to them as an attorney, and with a know-ledge of the merits of the controversy, which he had acquir-ed as an attorney; and there is no evidence, and not even an averment in the answer, that he disclosed to S. and R. the solid grounds of his hope. The knowledge and skill which he had thus acquired ought to have been employed, if employed at all, strictly in his professional character, for the benefit of those trustees, and not for his own emolument. The purchase, under the circumstances, falls within the prin-ciple of the obnoxious dealings between attorney and client.

But it has been observed, that the defendant *P.* had an interest in the suit, as one of the creditors of *De Peyster*, to the amount of his debt of 196 dollars. The evidence is not quite decisive that he was one of the creditors named in the first assignment to *S.* and *R.*, and for whose use the assign-ment of the wine was also made. *De Peyster* says, that when he stopped payment, he owed *P.* that sum, and that he gave *P.*, as collateral security for the payment of it, a note of one *Baylis*, for upwards of 80 dollars, and twelve and a half shares in the *Washington* Hall stock; and he says fur-ther, that the defendant *P.* was not mentioned in the list of his creditors, which he exhibited to the Recorder in *July*, 1811, when he was discharged under the insolvent act; be-cause the defendant *P.* " preferred to abide by the collateral security which *De Peyster* had given him, as before mention-ed." This does not look as if he was one of the creditors named in his general assignment in *January*, 1811; and *De Peyster* does not speak with certainty, whether his name was inserted. He only says, " he thinks" his name was inserted. If the defendant *P.* had been one of the original *cestuy que trusts*, why have we not some evidence given by him of his claim between *January*, 1811, and *July*, 1815, for a rateable share of the proceeds of the first assignment, which, he says in his answer, consisted of a schedule of debts and effects, and which assignment he himself drew? What has become of the debts and effects so assigned in trust to *S.* and

*R.,* and has there been no distribution of them among the creditors who were indisputably named? If the defendant *P.* was one of those creditors, it is to be inferred from the testimony of *De Peyster,* that he had waived his right under that assignment as early as *July,* 1811, when his name was intentionally omitted (and with his consent, for he conducted the proceedings as attorney) in the sworn list of *De Peyster's* creditors. He relied solely on his distinct and separate collateral security, or rather took that security as a satisfaction of his debt; otherwise, his name could not have been honestly omitted in the full and perfect list of creditors required by the insolvent act.

But admitting that the defendant, *P.,* had still an interest in the assignment to *S.* and *R.,* that interest did not change the nature of the purchase of the suit. Had he assisted in the prosecution for the benefit of his rateable proportion of the dividend of the proceeds, he would not have been liable to the charge of maintenance, and such assistance is all that is intended in the books. It is an assistance given towards carrying on a suit, for the common benefit of those in interest. Here the defendant sued in the character of purchaser of the whole subject matter in controversy, and for his own exclusive benefit. He took it as purchaser for a trifling consideration, and on a speculation of great gain, and with a belief (for so he admits in his answer,) of recovery; and nothing was said or alluded to respecting his *scintilla* of interest in the assignment to *S.* and *R.* : nor was the assignment to him made in satisfaction of a precedent debt, due *bona fide* to him. It was a purchase by him as a stranger ; and it is altogether inadmissible for the defendant *P.* now to set up his interest as a pretext for the purchase. That colour or pretence has no foundation in fact, for it was no inducement to the purchase, and the case falls most clearly within all the mischiefs and all the meaning of champerty.

Where an attorney purchases from his client the whole subject matter of controversy, for his own benefit, though he may have had some interest of his own, it is *champerty.*

If the purchase by the defendant was void, yet it is said that it is good as between the parties to it, and is only void as against him who has right. That objection does not apply to this case ; for the plaintiffs, *S.* and *R.*, have no right of their own, and do not pretend to any. The whole case admits that they possessed the right of action, as assignees for certain creditors of *De Peyster*, and the suit now brought by them is entirely *en autre droit*, and was to enure to the benefit of these creditors. If the assignment of the right of action to *P.* was void, then the judgment recovered by him in their names belongs to them, and is subject to their disposition as trustees. And as far as this suit is brought for the benefit of the plaintiff *Arden*, and to prevent him from being charged by a person not entitled to the judgment, the objection has no application.

A decision of a Court of law, on motion and affidavit, is not such a *res judicata*, as will conclude another Court from inquiring into the case.

But the question touching the validity of the assignment to *P.*, is said to have been already decided by the Supreme Court, on the motion of the defendant *P.*, to have the satisfaction of the judgment acknowledged by *S.* and *R.*, and entered upon record, vacated. I do not consider the decision of that motion, upon affidavits, to amount to a *res judicata*, which ought to conclude the present inquiry. It could not have been so intended by that Court. We have not the reasons upon which the Court decided, and the decision may have been upon grounds very different from the question of the validity of the assignment. But this objection utterly fails upon the principle adopted by the judges of the Supreme Court, and sanctioned by the Court of Errors, in *Simson* v. *Hart*, (14 *Johns. Rep.* 63.) in which case it was declared, that decisions upon motion and summary application, which do not admit of great discussion, or of being subject to a writ of error, are not final and conclusive so as to amount to a *res judicata*, and a bar to a renewed consideration of the case, in another Court of concurrent jurisdiction.

As to the compromise and settlement of the judgment,

made between S. and R. and *Arden*, it does not appear to have any bearing upon the question before me. Whether that settlement was proper and fair, or collusive and a breach of trust, is not to be discussed in this suit. We have not the proper parties in interest before us. It is a question entirely between S. and R. and those creditors for whose benefit they took the assignment of the wine and the claim upon *Arden ;* if they should hereafter bring that subject into discussion, it will then be in time to consider of the validity of that settlement. And I cannot but be of opinion, that the bringing of all these extraneous acts into view, such as the settlement with *Arden*, and the usury of *Arden*, and the efforts of *Arden* to defeat the recovery in trover, by keeping back the witness, and the efforts of the defendant *P.*, to coerce the attendance of that witness by extraordinary means, was entirely useless, as to the great point in the case, touching the validity of the purchase by *P.* ; and that if these circumstances were to have any effect, it would be a pernicious one, by distracting the attention, or by exciting prejudices unfavourable to a just and dispassionate consideration of the point.

I shall accordingly declare, that the assignment by the plaintiffs, S. and R. to the defendant *De Hart*, for the use of the defendant *P.*, of their demand and right of action against the plaintiff *A.*, was an unlawful sale and purchase by the defendant, and ought not to be sustained, or the judgment recovered thereon permitted to be enforced, for the benefit of the defendants, or either of them ; and that upon payment to the defendant *P.*, or to his solicitor, or depositing with the assistant register for his use, the 351 dollars 31 cents so recovered of the defendant, as the consideration of the assignment, together with the taxable costs of the suit at law, brought by the defendant *P.*, in the name of the plaintiffs S. and R., a perpetual injunction issue, prohibiting the defendant *P.*, his agents, &c. or any person for his use, from pro-

Decree.

ceeding at law to enforce the judgment so recovered against the plaintiff *Arden*, by execution, *scire facias*, action of debt, or otherwise, and that no costs of this suit be charged by either party as against the other.

                                          Decree accordingly.