UTICA,
August, 1829.

The People
v.
Walbridge.

---

## THE PEOPLE vs. WALBRIDGE.

By the "act to prevent abuses in the practice of the law," (Statutes, vol. 4, 278, c.) attornies and counsellors at law are *prohibited from the purchase or receiving* of any promissory note, &c. except in payment for estate real or personal sold, for services rendered, for a debt antecedently contracted, or for the purpose of making remittance, although such note, &c. be not purchased for *collection*, or for the purpose of bringing a suit thereon.

CASE brought up from the Rensselaer oyer and terminer for the advice of this court. The defendant was indicted, for that on the 20th day of April, 1824, he did *buy* of one J. B. Souza a certain promissory note, bearing date the 14th April, 1824, made by one William McMurray, for the sum of $125, 50, payable to A. V. Adriance or order in ninety days, endorsed by the payee to Souza, who was the holder and proprietor thereof until the purchase thereof by the defendant, for a good and valuable consideration; he, the said defendant, at the time of such purchase, being an attorney and counsellor of this court, and of the court of common pleas of the county of Rensselaer; and that the defendant did not buy

or receive the said note in payment for any estate real or per- <span style="float:right">UTICA,</span>
sonal, or for any services actually rendered, and for any debt August, 1829.
antecedently contracted, or for any purpose of remittance, The People
without any intent to violate or evade the act of the legisla- v.
ture of the state of New-York, entitled, "An act to prevent Wallbridge.
abuses in the practice of the law, and to regulate costs in cer-
tain cases," passed April 21, 1818.* The defendant was also
charged, in other counts of the same indictment, with having
bought four other promissory notes given by the said William
McMurray, viz. one to Prudence Barton for $42,60, anoth-
er to A. V. Adriance for $125,50, a third to E. Goss for $31,
20, and a fourth to C. Fairbanks for a sum of money to the
jurors unknown. The same averments were made substan-
tially as in the first count of the indictment. The defendant
pleaded not guilty, and a trial was had at the Rensselaer
oyer and terminer, in June, 1827, before the Hon. WILLIAM
A. DUER, one of the circuit judges, and DAVID BUEL, jun.
and HERMAN KNICKERBACKER, Esquires, judges of the county
courts of that county.

---

*The *first* section of the act is in these words :

"Be it enacted, &c. That no attorney or counsellor at law of any court of
record in this state, shall directly or indirectly buy, or be in any way or man-
ner interested in buying any bond, bill or promissory note, bill of exchange,
book debt or other chose in action ; nor shall any such attorney or counsel-
lor, by himself, or by or in the name of any other person, either before or af-
ter suit brought, lend or advance, or agree to lend or advance, or procure to
be lent or advanced, any money to any person, in consideration of, or as an
inducement to the placing or having placed in the hands of such attorney or
counsellor, or in the hands of any other person, any debt, demand or chose in
action against any other person for collection ; and every such attorney or
counsellor offending in the premises shall be deemed guilty of a high misde-
meanor, and on conviction thereof, shall be struck from the roll of attornies
or counsellors, or both, as the case may be, in the several courts wherein he is
licensed ; and shall moreover be subject to fine and imprisonment, or either,
as the court before which such conviction shall be had, shall in their discre-
tion think proper and adjudge ; provided always, that nothing herein contain-
ed shall be construed to prohibit the receiving in payment, by any attorney
or counsellor, any bond, bill, promissory note, bill of exchange, book debt,
or other chose in action, for estate real or personal, or for services actually
rendered, or for a debt antecedently contracted, or from buying or receiving
any bill of exchange, draft or other chose in action, for the purpose of remit-
tance, and without any intent to evade or violate this act."

UTICA,
August, 1829.

The People
v.
Walbridge.

On the trial of the cause, the making of the note set forth in the first count of the indictment, and the endorsement of the same by the payee to Souza, were proved. Souza testified that he, in April, 1824, called on the defendant and requested him to purchase the note ; that the defendant, on inspecting the note, observed that McMurray was a long winded fellow, and Adriance he considered insolvent; but that if witness would deduct $10, and endorse the note, he would let him have the money ; that witness did endorse the note, received $115 50, and left the note with the defendant. On his cross-examination, he stated that the defendant said, at the time, he would not buy the note, but that if witness would endorse it and discount $10, he would let him have the money; that if paid when it became due, well; if not, he should look to witness. The witness further testified, that the note, when due, was protested; and he received notice of non-payment from the defendant, whom he directed to prosecute the maker of the note for the benefit of witness.

The purchase of the note given by McMurray to P. Barton for $42,60 was proved. The note to Goss for $31, and the note to Fairbanks, (proved to be for about $23,) were shewn to have been in the hands of the defendant, who was a justice of the peace, and told McMurray that one McCullough had left them with him, the defendant, for collection, and had taken out two summonses against him (McMurray.) After some negotiation between the defendant and McMurray, the latter gave the defendant his note for $87, which sum composed of the said two notes and several demands which the defendant had against him. It was admitted, that on the 1st of April, 1824, the defendant was, and at the time of the trial continued to be an attorney and counsellor of this court, and of the Rensselaer common pleas.

The counsel for the defendant urged that the evidence was not sufficient to warrant a conviction, because, 1. The note received by defendant from Souza was not due at the time of its delivery to the defendant ; 2. It was left as a pledge to secure the money loaned to Souza ; and 3. The three other notes were severally under $50. The court overruled these objections, and charged the jury that, in their opinion, if the

defendant actually purchased the note of $125, it was immaterial whether the purchase was made before or after it became due ; that it was their province to determine whether he purchased the same or received it as a pledge ; that to convict the defendant, the jury must be satisfied that the defendant directly or indirectly bought the note ; that if satisfied of such purchase, the defendant, to justify himself, was bound to shew that in making the purchase he came within the words or spirit of the proviso of the act under which he was indicted. As to the other three notes, the court told the jury that, in their opinion, the fact of the notes being severally for less than $50, furnished no defence ; but that it was for the jury to determine, both as to the construction to be given to the act, and whether or no the defendant, in the purchase of the said notes or either of them, came within the spirit of the proviso of the act. The jury found the defendant guilty, and the oyer and terminer suspended judgment until the advice of this court could be obtained.

*H. P. Hunt*, for defendant. The object of the statute under which the defendant is sought to be convicted is, to prevent the purchase by the attornies of notes, &c. *with the intent* to commence suits thereon. The act of 1818, (Statutes, vol. 4, p. 278, c,) referred to in the indictment, creates no new offence. The general " act concerning counsellors, attornies and solicitors," passed in 1813, (1 R. L. 417, § 7,) had already declared it a misdemeanor for an attorney to purchase a note, &c. with the intent to sue ; and the sole object of the act of 1818 was to obviate objections as to proof, which, under the former act, was necessary, and yet difficult to be produced. The public prosecutor was bound to aver and prove *the intent* with which the purchase was made. By the act of 1818, the burden of the proof is cast on the accused. In 1 Cowen, 458, Mr. Justice Sutherland, in speaking of these statutes, says they are in *pari materia*, and thus supports the construction we contend for. Unless we are right, an attorney cannot pay the debt of his father and retain the security, without subjecting himself to the danger of being struck from the roll. The *second* section of the act of 1818, shews the intent of the legislature in the *first* section, under which this

UTICA, August, 1829.

The People v. Walbridge.

prosecution is had. By the second section, a defendant sued on a note, &c. is allowed to plead that the note, &c. was *bought or received for prosecution*, contrary to the provisions of the act; and on proving the fact, is entitled to demand a nonsuit. It has been supposed that because the act of 1820, (Statutes, vol. 5, p. 141, b,) extending the the prohibition to the purchase of notes, &c. to justices of the peace, forbids such purchase, " for the purpose of commencing any action thereon," that such act is a legislative exposition of the act of 1818 ; that in one case the illegallity is made to consist in the *intent ;* in the other, in the simple fact of *purchase*. It is denied that this is a fair deduction. On the contrary, we contend that the act of 1820 has explicitly declared, what we say is the spirit of the act of 1818. If this view of the act be correct, then, there is no offence charged in the indictment ; for there is no allegation that the notes were bought with the *intent* to sue, and the jury were misdirected when told that unless the defendant brought himself within the *proviso* of the act he must be convicted. The legislature, in the *Revised Statutes*, (vol. 1, p. 288,) in re-enacting the law of 1818, have made the offence to consist in the purchase of a note, &c. *with the intent* of bringing a suit thereon.

In indictments for offences created by statutes, it is not enough merely to pursue the description of offence in the words of the act. It should be alleged that an offence *against the public* has been committed. Thus, in this case it should have been averred not only that a note was bought, but that it was bought with the intent to commence a suit upon it, to the injury of the citizen by the unnecessary commencement of a suit, the unjust accumulation of costs, &c. (1 Chitty's Crim. Law, 276. Hawkins, book 2, ch. 25, § 99. 2 T. R. 581, opinion of Buller, J., and 3 T. R. 98.)

*J. Pierson*, (district attorney of Rensselaer co.) The question now argued was not raised at the trial. Indeed it could not have been heard, as the indictment was originally demurred to for the want of an averment that the notes were bought *with the intent* to be sued, overruled by the oyer and

terminer, and their decision supported by this court. (6 <span>UTICA,</span> Cowen, 512.) The questions presented at the trial were, <span>August, 1829.</span> that one note, when purchased, was not due, and that it was <span>The People</span> taken as a pledge; and that as to the other notes, being for <span>v. Walbridge.</span> amounts less than $50, and thus not the subjects of suits on which costs could be made, they were not of that description which attornies were prohibited from purchasing. [The district attorney here entered into an argument, and cited a number of cases in support thereof, in opposition to the objections raised at the trial; but, as the decision of the court is made upon the principal question raised on the argument here, it is deemed unnecessary to present a view of this part of the argument of the public attorney.]

As to the necessity of the averment and proof *of the intent* with which the purchase was made. The statute requires no such averment or proof. The act of 1813 did require it, and therefore the act of 1818 was passed. The difficulty of proving the *intent*, induced the legislature to declare the mere act of purchasing a note, &c. by an attorney, except in the cases specified in the proviso, the offence. Can it be, when the legislature have specified the cases in which only it shall be lawful for an attorney to receive a note, &c. that the act may be evaded by an objection that the indictment does not contain an averment which the statute does not render necessary. If such averment be required, the act of 1818 is nugatory, and the law remains as it was under the act of 1813. The indictment, setting forth the offence in the words of the statute and specifying with all possible precision the transaction charged to be a violation of the act, is sufficient.

*A. Van Vechten*, in reply. To prevent abuses in the practice of the law, is the title of the act under which this prosecution is had. The object of the legislature was, to deter attornies and counsellors, in the practice of the law, availing themselves of their situation to accumulate costs at the expense of poor and unfortunate debtors, from the purchase of notes, &c. *with the intent* to commence suits thereon. The statute was passed to prevent abuses in the practice of the

UTICA,
August, 1829.

The People
v.
Walbridge.

law, as connected with the purchase of notes, procured for the increase of such practice, to the emolument of the attorney, and to the detriment of the citizen, and it imposes the severest penalties on attornies for doing an act so derogatory to their profession, and so injurious to the public. This is the offence aimed at by the statute. From the mere buying of a note, no abuse in the practice of the law could arise. The buying of a note is not the practice of the law ; for if so, every broker would be a practitioner of the law. The statute was not meant to prohibit a benevolent act, as the paying of a note of a friend and retaing the security ; or an entirely innocent act, as the buying of a note and locking it in a desk until paid ; or a speculation in the public stocks, should an attorney be so fortunate as to have some surplus funds. Stock is a chose in action, and the purchase of it is equally prohibited with the purchase of a note. It is the *malum animum* which the law regards ; *it is the intent* with which the purchase is made which characterises the act. To state in an indictment that an attorney has bought a promissory note, does not shew that he has committed a crime, or violated a statute, unless it be averred that the intent or object of the statute has been violated ; and if the offence consist in the *intent* to violate the object and spirit of the act, such intent must be expressly averred and proved. If a contrary construction is to prevail, every person who has ever been admitted as an attorney or counsellor of this court, although he has retired from the practice of the law for years, is prohibited, under any circumstances, from purchasing a note, &c. although such purchase is entirely disconnected with the practice of the law, to prevent abuses in the practice of which, the statute was passed, and for no other purpose. The second section of the act, which destroys the right to recover on a note bought for prosecution, shews the intention of the legislature, and the *proviso* to the first section, which looks to the intent, corroborates our construction, that it is the intent alone which renders the purchase unlawful.

The act of 1818 is broader in its terms than the act of <span>UTICA,</span>
1813, and was intended to prevent evasions of the act first <span>August, 1829.</span>
passed, but it creates no new offence. The purchase of a <span>The People</span>
note, &c. with the intent to sue, is the evil intended to be <span>v.</span>
remedied by both acts; both relate to the same object, and <span>Walbridge.</span>
are therefore in *pari materia.* The principle of the acts of 1813
and 1818 was extended to justices of the peace, by the subse-
quent statute, passed in 1820. That act clearly expresses, that
the evil intended to be remedied, was the purchase with the
intent to sue. The oyer and terminer erred in instructing
the jury that it was their province to give a construction
to the act; it is the duty of a court, and not of a jury, to
put a construction upon a statute.

*By the Court,* SAVAGE, Ch. J. This case came before us
heretofore on a demurrer to the indictment. (6 Cowen, 512.)
We then considered the indictment good, and it was car-
ried down to the oyer and terminer for trial; the jury have
passed on the fact of the purchase of the note, charged in the
first count. The question is again presented, whether the
indictment charges any offence punishable by law.

The substance of the first section of the act rejecting su-
perfluous verbage is, that no attorney or counsellor shall buy
any bond, bill, promissory note, bill of exchange, book debt
or other chose in action; nor shall any such attorney or
counsellor, directly or indirectly, lend or advance any money
to any person as an inducement to the placing in the hands
of such attorney or counsellor any debt, demand or chose in
action against any other person *for collection:* then follows
the penalty and the proviso, which is, that it is not intended
to prohibit the receiving in payment by any attorney or
counsellor, any bond, &c. for estate, real or personal, or for
services actually rendered, or for a debt antecedently con-
tracted, or from buying or receiving any bill of exchang,
draft, or other chose in action, for the purpose of remittance,
or without any intent to evade or violate this act. As I read
the act, it creates two offences; first, the act of purchasing
a note by an attorney or counsellor is prohibited; secondly,

UTICA,
August, 1829.

The People
v.
Walbridge.

the procuring a note, by loan of money, for the purpose of collection. It is contended that the words *for collection*, in the statute, relate to all which precedes them, and that of course the purchase is not prohibited, unless made *for collection ;* but from the manner in which the sentence is framed, it seems to me the words *for collection*, relate only to the member of the sentence in which they are found, and not to the first member ; and consequently the first member contains an absolute prohibition, without reference to the intent or object of the purchase. This construction seems to me to be confirmed by the proviso. If no offence was created unless the purchase was made for the purpose of collection, it was surely useless, at least, to state in the proviso that there were four objects for which an attorney or counsel might lawfully purchase a note. If he was at liberty to purchase for any purpose except *for collection*, why specify only four instances in which he was not prohibited from purchasing. The introduction of the proviso proves to my mind, that the legislature supposed that without it, no note could be purchased by an attorney or counsellor for remittance, or received in payment *for property sold, or for services rendered, or for an antecedent debt* ; and of course they must have intended the first paragraph of the first section as a total prohibition.

As long since as 1807, the legislature considered the purchasing of notes *for collection* an evil requiring their interposition ; and they then, (sess. 30, ch. 107, sect. 4,) enacted, "That if any attorney of the supreme court, or of any court of common pleas, shall purchase or receive, by way of pledge or security for money lent, any bond, note or other writing with intent to commence a suit thereon, and shall commence such suit accordingly, every such attorney shall be deemed guilty of a misdemeanor." This section was re-enacted in the same words in the seventh section of the act concerning counsellors, attornies and solicitors, in the revision of 1813, (1 R. L. 417 ;) and so the law remained until 1818, when the statute now under consideration was passed. The object of the legislature undoubtedly was to prevent the officers of courts from purchasing notes, or loaning money upon

them, for the purpose of prosecution. The intent, under the former law, was to be shewn by a suit actually commenced. Probably the legislature was of opinion that in that way they could never strike at the root of the evil. It is certain, however, they intended something different from the former statute, and something more restrictive. Had they intended only to prohibit an attorney from purchasing a note *for collection*, it was very easy to say so. But they evidently, to my mind, intended to relieve the public prosecutor from any trouble in proving *the intent* with which the purchase was made. The purchase is to be of itself evidence of the intent; and the attorney shall be punished severely for the act, unless he disproves the wicked intent, by shewing one of four things, viz. a receiving the note for property sold; for services rendered; for an antecedent debt; or for the purpose of remittance, and without any intent to evade or violate the act; that is, as I understand it, every other mode by which an attorney gets a note into his possession as owner is a violation of the act.

It is contended, if such is the true construction of the act, that it is oppressive and unconstitutional. There is nothing in the constitution to prohibit the legislature from imposing restrictions upon certain classes of citizens. The constitution itself has set the example, by prohibiting certain persons from holding any civil office, as being incompatible with the duties of their professions. The legislature, no doubt, thought it derogatory to the character of an attorney or counsellor to be soliciting or purchasing business, and thereby causing distress in the community by numberless unnecessary prosecutions; and they said, (and properly so, in my judgment,) that no man who is capable of resorting to such expedients shall hold the office of attorney or counsellor in this state. They judged correctly, also, in concluding that to remedy the evil, there must be no difficulty about proving the intent. They no doubt asked, for what purpose does an attorney buy a note, unless for prosecution? and answered by saying, he buys it for no other purpose, unless he brings himself within the exceptions contained in the proviso. They accordingly

UTICA,
August, 1829.

The People
v.
Walbridge.

UTICA,
August, 1829.

Franklin Ins.
Company
v.
Jenkins.

went the whole length of absolute prohibition, except in the specified cases.

I am therefore of opinion that the court of oyer and terminer be advised to render judgment against the defendant upon the conviction.