Gale vs. Cutler.

## GALE, JR. VS. CUTLER.

1. BILL IN EQUITY.— Every bill in equity must contain in itself sufficient matter of fact, to maintain the cause of the complainant, so that the same may be put in issue by the answer, and established by proof.
2. PROOFS MUST CORRESPOND WITH BILL.— The proofs must correspond with the allegations of the parties, and, if they go to matters not within the allegations, the court cannot act judicially upon them as ground for a decree.
3. PLEADING IN EQUITY.— Whether a bill contains ground for relief or any equity is a question of merits; the inquiry is, has the complainant averred any matter which, if true, entitles him to the relief prayed for, or any relief; or set it forth in the manner required by the rules of equity? If the bill contains no equity, or sets it out defectively, it is good cause for a general demurrer.
4. RESCISSION OF CONTRACT.— Where a complainant seeks relief against a contract, under the act of Congress of the 31st March, 1830, for the relief of purchasers of the public lands, and for the suppression of fraudulent practices at the public sales of the lands of the United States; the bill must allege and show, that the contract sought to be rescinded is within the statute, and that the complainant has no legal evidence of the contract in order to entitle him to relief in equity.

5. INJUNCTION.— If a mortgagee is about to foreclose a mortgage by advertising and selling the premises, a court of equity will not enjoin him or interfere, until the mortgagor first does equity on his part.

APPEAL from a decree in equity of the District Court for *Milwaukee* County.

*Gale* filed a bill in equity against *Cutler*, in the Milwaukee county district court, setting forth:

That on or about the 10th March, 1838, *Cutler* was in possession of the N. E. fractional quarter of sec. 3, T. 6, R. 19, in Milwaukee county, then the property of the United States, and in expectation that it would be shortly sold at public sale, agreed in writing with *Gale* to convey to him by deed the said land whenever it could be purchased, upon the express understanding and condition that *Gale* should pay to him $6,000, or secure the same by mortgage on the premises after the conveyance; which agreement is charged to be in the possession of *Cutler*.

Upon the execution of the agreement, *Gale* paid to *Cutler* $375; and by two bonds, bound himself to pay to *Cutler* $5,625, in different installments.

*Gale* immediately entered into possession of the premises, and expended in improvements thereon, before the public land sales, $20,000.

At the land sales, *Gale* was ready and desirous to purchase the land in his own name, but *Cutler* refused to permit him to do so, and threatened to bid the full value of the land himself.

On the 16th October, 1839, the day previous to the land sale, *Cutler* executed to *Gale* a deed for the premises, and at the same time *Gale* executed to *Cutler* his note for $6,000, and a mortgage on the premises to secure its payment according to the aforesaid bonds and the first contract, which deed, note and mortgage were placed in the hands of one *Cushman*, to be delivered respectively to the parties when *Cutler* should enter the premises according to the first agreement.

On the 17th October, 1839, *Cutler* bought the land at public sale for $1.25 per acre, and on the same day *Cutler*

executed to *Gale* a deed for the land, for the consideration of $6,013.66, reserving for himself one village lot, and *Gale* gave his note for that sum, payable in one year with interest, and a mortgage on the premises to secure the payment, the papers placed in the hands of Cushman having been canceled.

The bill charged that Cutler had advertised the land for sale by virtue of a power contained in the mortgage for that purpose, and that he refused to deliver up said mortgage and note to be canceled, as he ought in equity to do.

The bill prayed for an injunction against *Cutler* to restrain him from foreclosing the mortgage, and a decree that the mortgage and note should be canceled and delivered up, and that *Cutler* should pay to *Gale* the excess already paid for the land over the sum of $1.25 per acre.

To this bill *Cutler* filed a general demurrer, which the district court sustained, and dismissed the bill with costs. *Gale* appealed from this decision to the supreme court.

*H. N. Wells* and *J. E. Arnold*, for appellant :

The district court erred in dismissing the bill, because it shows a case strictly within the act of Congress of 31st March, 1830. 4 Story, 2188, § 3. It is said that the court cannot give relief without rescinding the contract in toto, and decreeing the land to *Cutler*, on the principle that he who asks equity must do equity. But this bill is founded upon a positive act of Congress, and he only asks for a rescission of the unlawful part of the contract according to the provisions of the act. Under the law the contract is good for $1.25 per acre ; it is the excess that is made void. Equity decisions and chancery practice have nothing to do with the case. The bill is not based upon principles of equity, but on a positive act of Congress that has no equity in it. The law stands a positive act of legislation, and secures to the party the relief prayed for, and the court is bound to carry the law into effect.

The design of the 4th section of the act is to prevent

fraudulent combinations to suppress biddings at the public land sales. The fifth section is to make void any contract entered into for that purpose, and not that only, but to give a remedy to any person who may be oppressed by such practices. *Piatt v. Oliver*, 1 McLean, 301.

It is contended by the appellee that, if the court grants relief in the case, the whole contract must be rescinded and the parties placed in *statu quo*. If this were an ordinary case, the principles of equity would so apply ; but it is a peculiar case, brought under a particular statute, and the common rules of equity practice do not govern it. If it comes within the law, a part of the contract may be rescinded and the rest remain valid. The statute only makes void all contracts to pay an excess over what the land costs the purchaser at the sale ; and if such excess has been paid, gives the party a right to recover it back. If it was designed to rescind the deed, it would have given him the right to recover the whole sum paid. By this construction of the act the law is made to harmonize, and its beneficial provisions will be carried into effect.

The deed and mortgage for the land were not a new contract, made after the purchase of the land by *Cutler*. The bill shows that they were made in pursuance of, and founded upon the previous contract between the parties, made before the land sale.

*A. P. Field* and *Edward V. Whiton*, for appellee.

The bill does not present a case within the act of Congress. The parties made and modified their contract several times, and the one sought to be avoided was made after the land sale. Besides, there was no contract for Gale to pay any excess over the sum which Cutler should have to pay for the land ; he was to pay a sum certain, without reference to what the land should cost Cutler. The case is not one provided for by the statute. The act relied upon is a rigid law, and the party must bring himself clearly within its provisions before the

court will disregard the principles of justice and equity to grant him relief.

Courts of equity will not relieve a party to a fraudulent contract and give him the benefit of the fraud. The deed to Gale for the land is a part of the same contract; and if any part is void the whole is void; and if relief is granted, the parties must be restored to their original rights.

To authorize a court of equity to interfere under the statute, the complainant must show in his bill that he has no legal evidence to establish the contract. The bill before the court does not show this; it only leaves the court to infer it, which the court cannot do. But from the bill itself it appears that there is evidence of the contract. Then it is a case for a court of law, and not of equity jurisdiction. If the complainant has evidence to prove his contract, he must sue at law, and cannot be relieved in equity. 3 Paige, 154.

If the complainant is to be relieved by rescinding the contract, the court must place the parties in *statu quo*. Fonbl. Eq. 54; 2 Story's Eq. 6, 16.

The bill sets out a contract fairly made, without any allegation of fraud, and asks the court to rescind it only so far as the rescission will be for the benefit of the appellant. This could not be decreed, even if the case was brought within the act of Congress. That act says that every agreement or writing, founded on such a contract, shall be void.

The act of Congress relied upon is in derogation of the common law. It is a statute of pains and penalties, and must receive a strict construction, and the court will not annul a contract under it, unless it comes within its provisions in every particular. The contract set up in the bill is not within it. There is no agreement that *Gale* should pay any excess over what the land should cost *Cutler*. By the first agreement, *Cutler* was bound to purchase the land at the land sale, and he might have had to pay a greater sum than he was to receive from

*Gale.* His getting it at the minimum price was an accidental circumstance.

But the contract set up in the bill, and sought to be rescinded, was made after *Cutler* purchased the land, and the act of Congress does not mention any such case. It is true that the first contract is stated with some obscurity, and it may be that the latter was, in some degree, founded upon it, but the bill shows that they were essentially different from each other.

MILLER, J. The bill of complaint of *John Gale, Jr.*, filed in this case, sets forth, that on or about the 10th day of March, 1838, *Alonzo R. Cutler*, the defendant, was in possession of the south-east fractional quarter of sec. 3, T. 6, of R. 19, in Milwaukee county, the same then being the property of the United States. In the expectation and belief that the same would shortly thereafter be sold by the United States, the said defendant entered into an agreement, in writing, with complainant, to convey to him by warrantee deed the said premises, when the same should be purchased of the United States; upon the condition that complainant should pay to him the sum of $6,000, or secure the payment thereof by a mortgage of the premises, after the same should have been conveyed to complainant by defendant. That on the execution of said agreement, complainant paid to defendant $375, and gave his bond to defendant for the amount of $5,625, and immediately received from said defendant possession of the premises, which he continued to occupy and hold until the day of the sale thereof by the government and ever since, and for himself and others expended $20,000 in improving said premises. At the time of the sale of the said premises by the government, complainant was ready, willing and desirous to purchase the land in his own name, but said defendant absolutely refused to allow him to do so, and insisted on buying it himself, and threatened to bid against complainant at the sale to the full value of the property.

On the 16th day of October, 1839, being the day previous to the sale of said premises by the government at the Milwaukee land office, said defendant executed to complainant a warrantee deed for the same, which was lodged in the hands of Peter N. Cushman, to be delivered to complainant, after defendant should have obtained a title to said premises, according to the agreement of the 10th of March, 1838, and that at the same time, complainant executed to defendant his promissory note and mortgage of said premises, to secure the payment of the balance of said purchase-money according to the condition of the bond referred to, and agreeably to, and in pursuance of the said agreement ; which said note and mortgage were placed in the hands of said Cushman, to be delivered to the said defendant whenever complainant should receive from said Cushman the said deed. The said premises were sold by the government on the 17th day of October, 1839, by public auction at the Milwaukee land office, and were purchased by defendant, who paid to the receiver at said office, therefor, the minimum price of $1.25 per acre therefor, and received from said receiver a duplicate receipt for such payment. On the said 17th day of October, 1839, the defendant executed and delivered to complainant, for the consideration of $6,013 therein expressed, a warrantee deed for said premises, and thereupon the complainant executed and delivered to defendant his promissory note for said consideration, payable in one year thereafter with interest, and to secure the payment thereof, executed and delivered to defendant a mortgage of said premises, and the papers placed in the hands of Cushman were canceled. The defendant had advertised in a newspaper printed in Milwaukee county, the said premises for sale on the 28th day of January, 1841, by public auction, by virtue of the power of sale contained in said last mentioned mortgage, the said sum of money secured thereby not having been paid. The bill prayed an injunction to restrain said sale, and also prayed for a decree, that the overplus paid by com-

plainant over and above the price of the land at the rate of $1.25 per acre, be returned to the complainant, and that said last mentioned note and mortgage be canceled.

The defendant demurred to the bill, and, after argument, the court dismissed the bill, from which decree the complainant appealed.

Every bill must contain in itself sufficient matter of fact to maintain the case of the complainant, so that the same may be put in issue by the answer, and established by proofs.    The proofs must be according to the allegations of the parties, and if the proofs go to matters not within the allegations, the court cannot judicially act upon them as the ground for its decision.    9 Pet. 483. Whether a bill in equity contains any grounds for relief, or any equity, is a question of merits.    The inquiry is, has the complainant averred any matter which, if true, entitles him to the relief prayed for, or any relief ; or set it forth in the manner required by the rules of equity ? If the bill contains no equity or sets it out defectively, it is a good cause for demurrer.    The averments in this bill do not disclose any thing of themselves to entitle the complainant to the interposition of a court of chancery. But it is contended that this is a proper case, as set forth, for the action of the court, under the fifth section of an act of Congress, approved March 31, 1830, entitled, "An act for the relief of the purchasers of the public lands and for the suppression of fraudulent practices at the public sales of the lands of the United States."  Whether this is a contract or not, in violation of this statute, cannot be decided on this bill, for the complainant does not so charge it, nor does he even refer to it.    He leaves the court to infer from his bill that it is so, which cannot be done, for a court of chancery does not act upon inferences or uncertainties, but upon allegations and facts.    By that statute, the contracts therein referred to are void, and the party aggrieved may sue in any court having jurisdiction ; and if he has no legal evidence of the contract, he may, by bill in equity, compel a discovery thereof ;

and if in such case, the complainant shall ask relief, the court in which the bill is pending may proceed to final decree between the parties to the same. The want of legal evidence of the contract is not averred in this bill. It is held that equity will not enforce a discovery that is to lead to a forfeiture. 1 Johns. Ch. 368; id. 439; 2 Dessaus. 341; 3 Har. & Johns. 185; 2 Dallas, 92; 12 Serg. & Rawle, 46. Hence, possibly, the cause of this provision in the statute.

Upon general principles of equity, if a party is proceeding at law or in equity to collect his notes and mortgage through the instrumentality of the court, then, on the proper representation and proof of the facts, the court will give him relief without his going further on his part. 5 Johns. Ch. 136; 3 Bibb, 207; 4 Serg. & Rawle, 151. But it will abundantly appear in 5 Johns. Ch. 49, 136; 1 id. 368, 439; that if a party is proceeding to foreclose a mortgage by advertisement, a court of chancery will not enjoin him, or interfere, until the mortgagor first does equity on his part.

The decree of the district court is affirmed, with costs.