## MANN v. FAIRCHILD.

### December, 1865.

In an action framed as one of an equitable nature, the plaintiff cannot recover on proving a cause of action at law merely, which was barred by the statute of limitations applicable to actions at law.

The right of a receiver to call a debtor to the corporation to an account and to charge him as a trustee of its assets does not pass by his assignment of the demand against such debtor, to a third person, so as to sustain an action by the latter for an account, for the purpose of altering the rule of limitations.

An attorney bought a right of action from a receiver, for the benefit of his clients, but the latter objected to accept the purchase, and the attorney retained the chose in action himself, and paid for it with his own money, with intent to sue upon it. *Held*, that this purchase, although at a receiver's sale, and originally in the name of another person, was a violation of 2 *R. S.* 288, § 71, which forbids attorneys to buy things in action for the purpose of suing thereon.

Where such defense to an action is made out, an absolute judgment in favor of defendant, as distinguished from a judgment of nonsuit, is proper.

Abijah Mann, Jr. sued Egbert H. Fairchild and Henry W.

James, executors, &c. of Henry N. Fairchild, upon several demands which originally accrued against the decedent in favor of the St. Lawrence Bank. That bank was dissolved in 1843 and a receiver appointed. The receiver in 1846 sold such property and effects of the bank as remained in his hands, at public auction. The plaintiff in this action was the attorney of the Farmers' Loan & Trust Co., who were large creditors of the bank. He attended the sale as their agent, and bought in, in their name, the demands on which this suit was brought. They were as follows :

1. A demand against Egbert N. Fairchild, of Ogdensburgh, for six Arkansas State bonds of one thousand dollars each on which a suit had been commenced in the supreme court, and was now pending.

2. A demand against Egbert N. Fairchild for certain furniture belonging to the bank, taken by him.

3. A demand against Egbert N. Fairchild, of Ogdensburgh, for a balance supposed to be due from him on the books of the bank.

4. A claim against Fairchild and Bacon for any balance due from them to the St. Lawrence Bank, not theretofore settled by them.

5. All the rest and residue of the property and effects of the said bank, of whatever name or nature.

At the time of the sale, public notice was given on behalf of the defendants that these claims offered for sale were disputed and would be litigated. The plaintiff, however, purchased in the name and on behalf of the Loan and Trust Company, and so declared at the time. When he reported the purchase to the company, they were dissatisfied with the price he had paid, and he thereupon assumed the purchase in his own name and for his own benefit, and had bills of sale of these demands made by the receiver to himself, and paid for them with his own money.

He then brought this action against the defendants, and in his complaint alleged that the St. Lawrence Bank, being insolvent, and the insolvency being known to the decedent, who was then its cashier, the bank made an assignment of their assets to the decedent, in trust for the benefit of the directors

who had become personally liable for some of its debts; that by authority of such assignment, all the assets of the bank came into the decedent's possession, including the property mentioned in the enumeration of demands above stated. That the decedent never accounted to the bank, but had always refused to do so, and made a fraudulent and pretended transfer of part of the assets to one Henry Rensselaer. The relief demanded was that the defendant might be compelled to account to the plaintiff, who was assignee of the receiver of the bank, for the assets of the bank, and to be adjudged to pay to plaintiff whatever might be found due to him.

The answer, besides interposing the six years' limit of the statute of limitations, averred that plaintiff being an attorney, and a solicitor in chancery, purchased these assets with the intent and for the purpose of bringing suits thereon, contrary to 2 *R. S.* 288, § 71.

The referee before whom the case was tried, dismissed the complaint on the latter ground.

*The supreme court,* at general term, on appeal from the judgment on the referee's report, held, on the authority of a previous decision in 14 *Barb.* 554, that the statute prohibited purchases at judicial sales as well as in other cases, and that taking title, with intent to sue for himself, after originally purchasing for his clients, was a violation by plaintiff of the statute.

The order of the general term that the judgment be affirmed contained a clause that it was to be without prejudice on the merits, &c. The judgment entered thereon was simply "that the judgment be and the same is in all things affirmed, and it is further adjudged that the respondents, &c. recover their costs, specified. The plaintiff appealed to this court.

*Thomas H. Rodman,* for plaintiff, appellant;—That the judgment should not have been a dismissal of the complaint, which amounted to concluding the plaintiff on all the issues, but should simply have been a judgment of nonsuit. Bostwick *v.* Abbott, 16 *Abb. Pr.* 417; Ogsbury *v.* La Farge, 2 *N. Y.* 113; Hall *v.* Gird, 7 *Hill,* 590; Orcutt *v.* Pettit, 4 *Den.* 233. The objection to the purchase could only be proved by an examination of the plaintiff, his attorney or counsel, or some

other persons who may be interested in the recovery in the cause, on the defendant's application. 2 *R. S.* 288, § 76; Orcutt *v.* Pettit, 4 *Den.* 233. That the purchase must have been made with illegal intent, and that intent or motive of the purchaser must be satisfactorily proved. Hall *v.* Bartlett, 9 *Barb.* 301; Bristol *v.* Dame, 12 *Wend.* 144; People *v.* Walbridge, 3 *Wend.* 129. That the statute does not apply to judicial sales. *Code of Pro.* § 303; Benedict *v.* Stewart, 28 *Barb.* 420, distinguishing 2 *R. S.* 713, § 6, Edm. ed. which *ex vi termini* includes all sales. And if it does it is no defense in equity (Hall *v.* Gird, 7 *Hill,* 586), where costs are in the discretion of the court.

*Wm. C. Brown,* for defendants, respondents.

BY THE COURT.—POTTER, J.—This action, as appears by the pleadings, especially by the complaint and prayer or demand for judgment, is an action in equity, and seems to be based upon the theory that the defendant was a trustee of the St. Lawrence Bank, by virtue of certain resolutions, passed by the board of directors of said bank, or by virtue of an assignment made to him by said directors. If this theory, and the facts upon which it is based, shall fail, the action must fail, because, if the claim exists only at law, the statute of limitations set up makes a legal defense to it, as this action was not commenced within six years after the alleged cause of action accrued. If a party brings an equitable action, even now, when the same court administers both systems of law and equity, the party must maintain his equitable action upon equitable grounds, or fail, even though he may prove a good cause of action at law, on the trial.[*] Heywood *v.* City of Buffalo, 14 *N. Y.* 534, 540.

The referee has found, as a *fact* in the case, that the defendants' testator did not take possession of any of the property or effects of the said bank mentioned in the resolutions or proceedings referred to in the complaint. This finding has not been reversed; there was testimony to sustain such a finding, and this court in their review, are to regard this as true. The ref-

---

[*] Cited on this point in Bradley *v.* Aldrich, 40 *N. Y.* 504.

eree has not found that Fairchild took possession of any of said assets under the assignment made to him, but, on the contrary, he has found that the directors of said bank transferred to H. Van Rensselaer the remaining assets of the bank, and directed Fairchild, who was their cashier, to deliver the same to Van Rensselaer, and that Fairchild did so deliver them to him accordingly. This delivery, at the direction of the bank, was their delivery, and he, as their cashier, in obeying their direction, was not acting for himself individually, but for his principals. True, he signed the transfer to Van Rensselaer, but it appears uncontradicted that he first refused to sign it, on the ground that he did not hold the property as assignee, and only signed it upon advice of counsel, so as to cut off any claim to it by reason of the assignment to him. As the execution of this paper is the only evidence of his possession, and there being no finding that he ever had possession or accepted the trust, it was proper evidence, not to contradict the writing, but to negative the question of his possession, and as part of the *res gestæ*, to show his denial of possession; but we need not look beyond the finding of the referee in this regard. No objection being raised to this evidence of possession, this fact' could not be reviewed, even if it was error. In my view, therefore, the defendants' testator could not be and was not a trustee of the bank in any sense.

But, if we are mistaken in this view, and if he was such a trustee, as matter of law, what right has the plaintiff shown to call him to account? If, by virtue of his office as cashier, or otherwise, he became trustee, it was for the bank, or for their creditors, or the stockholders, to do so. All these rights to assets in his hands, which so belonged to the bank, it is shown, passed to the receiver upon his appointment, in fact as well as at law. All rights which the bank had held to assets or debts due them, from, or in the hands of, any of their debtors, passed to the receiver. On the 24th of February, 1843, the receiver sold to the plaintiff, at public sale, as such receiver, five several demands, enumerated as follows:

1. A demand against Egbert N. Fairchild, of Ogdensburgh, for six Arkansas State bonds of one thousand dollars each, on

which a suit has been commenced in the supreme court, and is now pending.

2. A demand against Egbert N. Fairchild for certain furniture belonging to the bank, taken by him.

3. A demand against Egbert N. Fairchild, of Ogdensburgh, for a balance supposed to be due from him on the books of the bank.

4. A claim against Fairchild and Bacon for any balance due from them to the St. Lawrence Bank, not heretofore settled by them.

5. All the rest and residue of the property and effects of the said bank, of whatever name or nature.

By this purchase, the plaintiff obtained all the title to these claims that was in the receiver, which was all the title the bank owned, before the receiver was appointed. The plaintiff makes no claim against Fairchild, under the fifth division of items. The other four were legal claims only, so that a several action in *equity*, to recover for either of them, would not lie. I do not see how the consolidation of them into one action, changes their character so as to enable him to sue in *equity* They were still legal claims. If it be true that the receiver before the sale, was officially the *cestui que trust* for creditors, the plaintiff did not buy this trust. The plaintiff held the claims when purchased, in his own right, for his own use and benefit, and not for others. The plaintiff did not purchase the trust. The receiver could not divest himself of this trust power to another; it was a trust only reposed personally in him, in confidence, by the court; he could not consign or convey a trust; it did not pass with the conveyance of each claim; it was not a thing to be scattered and divided to several vendees, who purchased demands at this public sale, in due proportions, so as to enable each to act as trustee, for the enforcement of his purchased claim. The receiver did not profess to sell it accompanied with a trust, and had there been a liability on the part of Fairchild to account to the receiver for the benefit, of creditors, it did not pass to the plaintiff by this sale. True, all equitable claims of the bank, against individuals, passed to the receiver, and it is equally true, that the receiver had the same power to sell to others equitable claims, as he had legal

ones, and the purchaser of an equitable claim takes with the claim the right to sue it in equity; but as the argument that the claim in question is of an equitable character, seems to depend upon its being a trust, we have proceeded to show that it has no trust features connected with it. I do not intend to say that the receiver is a trustee, by virtue of his office. I think it is otherwise;—he is the mere officer of the court, accountable only to them for the performance of his duties.

If we are right in this view, that the plaintiff's claim was strictly a legal one, and that he has shown no right in equity to recover, nor shown a case in which the courts of law and equity have concurrent jurisdiction, then the six years' statute of limitations applies to his demand, and the judgment should have been, as it is, for the defendant. 2 *R. S.* 301, 1 ed. §§ 49, 50, 52; *Code of Pro.* § 97; Borst *v.* Corey, 15 *N. Y.* 505, and cases cited at pages 509, 510. The case of Mann *v.* Fairchild, reported in 14 *Barb.* 548, is not to be regarded as *res judicata* of this matter, and certainly does not bind this court on the ground of the rule of *stare decisis.* Nor is the view we have taken now in conflict with the holding of the court in 14 *Barb.* The decision there was upon demurrer upon the assumed truth of the allegations in the complaint, which was in equity for an account. Here, the case stands upon facts found by the referee, showing a legal debt, if any, and not a case in equity, so that our holding does not even overrule the decision in 14 *Barb.*

Another ground, and from the briefs and arguments of counsel it would seem to be the principal ground upon which the case is to be decided, is, " that the plaintiff, at the time he purchased the claims or things in action, upon which this suit is brought, was an attorney and counselor at law, and *solicitor* in chancery, and that he bought the demands with the intent to bring the action thereon, that the purchase was therefore illegal, and prevents a recovery thereon."

The statute in this regard, 2 *R. S.* 288, § 71, provides, that " no attorney, counselor or solicitor, shall, directly or indirectly, buy, or be in any manner interested in buying, any bond, bill, promissory note, bill of exchange, book debt, or other thing in action, with the intent and for the purpose of bringing any suit

thereon." And section 73 of the statute makes such buying a misdemeanor.

The referee in this case has found as a fact, that the plaintiff, at the time of the purchase of the claims in this suit, was an attorney and counselor at law, and solicitor and counselor in chancery, and that he bought the said demands with the intent to bring a suit thereon. There is evidence in the case to sustain such a finding. The judgment being affirmed at general term, without reversing this finding of fact, we are not at liberty here to question this finding, unless it be that, notwithstanding such a finding, such intent could not exist as matter of law.

It is urged that, as matter of law, this purchase was not obnoxious to the provisions of this statute for two reasons; First, that the sale was a judicial sale; and, second, that the purchase was made in the name of the Farmer's Loan and Trust Company, and not in the name of the plaintiff.

The statute we have cited is as general in its terms of prohibition as is reasonably possible, in order to forbid the buying or being interested in buying by an attorney, &c. There is no exception; it applies in terms to all purchases. Did the plaintiff buy these claims? How otherwise did he obtain them? Did the Loan and Trust company buy at the receiver's sale? If so, then the plaintiff must have purchased of them, but he testifies himself that he purchased in his own name, but announced to the bidders that he was purchasing for the trust company. On reporting his action to the trust company, they were dissatisfied, and desired him to retain them himself, which he did. The sale was not consummated until after this agreement with the trust company; then the nominal purchase made in the plaintiff's name was completed by the plaintiff's paying his own money to the receiver, and taking the receiver's transfer to himself. These facts, I think, constitute this a purchase by the plaintiff; we shall best ascertain the intent of this statute by finding the object which the legislature had in view in its enactment. The first statute of this State, on this subject, seems to have been passed in the year 1818, ch. 259. Its title, as well as its provisions, clearly indicate its intent. It is entitled "An act to prevent abuses in the practice of the

law, and to regulate costs in certain cases." The first clause of section 1 of that act, contains the language of our present statute (section 71, above cited), except that in the last revision there was added the words, "*with the intent and for the purpose of bringing any suit thereon.*" This statute also made the buying, &c., by an attorney, a misdemeanor, punishable by indictment, fine and imprisonment. The revisers, in their notes, say, that the words above italicized, were added to. make the statute conform to the supposed intent, and citing two cases in the reports, arising upon this provision, which had been supposed to be somewhat in conflict, viz.: Van Rensselaer *v.* Sheriff of Onondaga, 1 *Cow.* 443, 458, where it was held that the above statute of 1818, "never meant to forbid the purchase of one demand *for the mere purpose of securing another,*" and the case of People *v.* Walbridge, 6 *Cow.* 512, 516, where the court said: "The intent with which an attorney or counselor buys a note, need not be alleged in the indictment, nor need it be averred that a prosecution has been commenced on it. It is the act of *buying* that constitutes the offense. See Williams *v.* Mathews, 3 *Cow.* 252, 261; People *v.* Walbridge, 3 *Wend.* 120, 129, *contra.* It will thus be perceived that, by the Revised Statutes, the mere buying is now, by legislative construction, as well as by the unmistakable language of the statute, not alone sufficient to constitute it a misdemeanor, and doubtless not sufficient to visit upon the purchaser the penal consequences of a loss of the claim purchased, without the fact being also established that it was also "with the intent, and for the purpose of bringing a suit thereon."

Such intent in this case is also found as a fact by the referee. We have looked far enough into the facts to be enabled to say, we find evidence to sustain such a finding; its weight was a question for the referee—not for us. The purchase was made by an attorney; the consideration paid was comparatively small. He had notice before the purchase that the claims were disputed, and, if suits should be brought, would be litigated and defended. When purchased, they were put in prosecution by the plaintiff, and the referee finds the demands were purchased with intent to bring a suit thereon. We hold that neither the purchase at a receiver's sale, nor the declaration, or

even the fact that the purchase was in the name of another, amounts to an exception in the law; it establishes no justification. The object for which the statute was passed would fail and could always be evaded if such defenses could avail. Arden *v.* Patterson, 5 *Johns. Ch.* 44, 48. The case of Orcutt *v.* Pettit, 4 *Den.* 233, is not in conflict with this view. If the intimation given in that case, that the plaintiff is to be examined, is sound (the soundness of which I do not concur in), such examination was had in this case. The statute does not demand that the testimony of the plaintiff when so received shall be conclusive, and if the question of intent is for the court, and not for the jury, the referee, who stood in the place of the court, has decided that question. This statute is entirely unaffected by section 303 of the Code of Procedure authorizing attorneys, &c., to agree with parties as to their compensation.

Assuming what this court is bound to assume as facts, the purchase in this case was contrary to public policy and to good morals, and is in contravention of the positive statutes of the State, and cannot be enforced. Pennington *v.* Townsend, 7 *Wend.* 276.

There are several other minor points raised on the argument, one of which is as to the form of the judgment—that is, that it should have been a judgment of nonsuit, instead of dismissing the complaint. Without seeing that any injury could result to the plaintiff if the judgment was in another form, it is sufficient to say it is right that judgment should be in favor of the defendant, and for costs, and, if we are right in the position we have taken, another trial could be of no avail to the plaintiff. I think the judgment must be affirmed.

All the judges concurred.

Judgment affirmed, with costs.